May it please the Court, Stephen Rosales on behalf of the plaintiff appellant Irma Landa. Within the Social Security context, the word occasional with respect to a limitation has a very distinct and specific definition. When someone has an occasional limitation, Social Security describes that in Social Security Ruling 8310 as being one that limits someone to performing something no more than one-third of a typical eight-hour workday. In this matter, the ALJ found, based on both physical and mental severe impairments, that Irma Landa would have, on the physical side, a limitation to the most restrictive level of exertional work, sedentary, and also, because of mental impairments, be limited to only occasional interaction, not only with supervisors but coworkers and the general public. The error in this case lies in the ALJ's adjudication at Step 5 of the disability analysis, after determining in Irma Landa's favor at Steps 1 through 4 that she had severe impairments, was not currently engaged in substantial gainful activity, and while not qualifying under Step 3, meeting a standard listed of impairment, did not have the ability to return her past relevant work. Actually, she had no past relevant work. And then having imposed the residual functional capacity, moved to Step 5 where the ALJ had the burden of demonstrating that there existed other work within the context of these significant limitations, which I've said were physically a limitation to the lowest level of sedentary, and no more than an occasional ability or cannot. Roberts. Isn't your case dependent? Aren't you arguing, in effect, that the severity determination that's required for Step 5 had been already made at Step 2? Well, no. What I'm arguing is that there's only one. Contrary to the more recent Hupai v. Astru decision, there is only one definition of severe in the regulations. Wait a minute. Contrary to a binding decision of this Court, you're saying. Yes. In other words, you want this panel to overrule Hupai. No, no. Or to contradict it. No. I want this panel to recognize that Hupai represents a divergent on the stream of all the cases that have existed since Heckler, which is the Supreme Court case that first adjudicated using the medical-vacational guidelines. Hupai said that Step 2 was a threshold determination of severity and not a determination of severity that would be preclusive on Step 5. No. Right? I can read it to you. I've got it here in front of me. Right. Is that right about what Hupai says? The way I read Hupai is Hupai says that there's two definitions of severe.  Okay. There's not. Well, he says the regulations guiding Step 2 of whether a disability is severe is merely a threshold determination of whether he's able to perform his past work. Thus, a finding that a claimant is severe at Step 2 only raises a prima facie case of disability, a prima facie case of disability. It's not a final determination of severity. The Hupai decision is taking language from various decisions, the Burkhart decision it cites, the Desrosiers case which it cites. The prima facie case of disability isn't established until Step 4 because my client and every other social security client up until Step 4 has the burden of proving that they satisfy those steps. And so at Step 2 and throughout the sequential analysis, in order to satisfy Step 2, my client must have a severe limitation. As defined in the regulations, severe or not severe is simply you're not severe if your impairment doesn't more than minimally affect your ability to do basic work activities, as defined in this case. Let me put it another way. Do you think Hupai was correctly decided in that case? I mean, it's pretty hard to distinguish that case from this one. Well, there's a big difference, Your Honor. In Hupai, the problem with the Court was the ALJ specifically only found sort of a vague, ambiguous, moderate limitation. Moderate has no definition in social security. If you search any law regarding social security, there will be no definition of moderate as far as that applies to an 8-hour workday. In this case, the ALJ has said that my client cannot interact with others, including coworkers, supervisors, and the general public, for more than one-third of the workday because that's occasional. And he said occasional, not moderate. Hupai didn't have occasional. Also in this case, the ALJ in determining that the grid was applied as opposed to the need to call vocations were cited a social security ruling that is explicitly not applicable here. Social security ruling 8515 applies only to claimants who have no exertional impairments. It does not anticipate involving individuals with a mixed combination. And the reason that's important is because the language in the administrative record in the judge's decision on page 19, he cites 8515 for the proposition that the grid was applied. And so he's very clear that that is a sufficient amount of time, but it's not a sufficient amount of time to make a judgment of those two facts, and that's fine, perfectly appropriate to do. But in terms of the general analysis, step two doesn't bind you on step five, and whether or not you need a vocational expert, you know, you – it's permissible to make a determination that the level of severity is such that you can – you meet the requirement of step two, but not meet the requirement of step five for purpose of requiring a vocational expert. The best way I can answer your question, Your Honor, is to simply say that at step two, one must have a severe impairment defined as something that significantly limits the ability to do basic work activity. Okay. All right. All right. If they don't satisfy step three, then the ALJ must impose a residual functional capacity. What that residual functional capacity by definition is, is merely articulating the specific significant limitations that arise out of the severe impairment. Therefore, if I have a – And also what the flip side of that is, the functional capacity that resides, that remains. Right. So if I have a severe back problem, okay, the reason it's severe is because it more than significantly limits, let's say, my ability to pick up or bend over. Okay. Now, it has to have significant limitation because it is severe. It has to be something. And so at the RFC assessment, the ALJ might hypothetically say he can no more than occasionally bend over during an eight-hour workday because of his bad back. That's a significant limitation. Now, the question that Hupai doesn't really – doesn't finesse out correctly is that at step five, once I've – once the RFC is attached and I survive step four, then it's the government's burden to produce the jobs. And now in my hypothetical example, in Social Security ruling 8310 – so let me step back. The Heckler case and all the other Social Security cases began with a proposition that if I don't match up to the guidelines, which only anticipate physical strength as well as age and education, then it doesn't apply. Okay. The courts have ultimately come to what Hupai is saying is that for some reason, now a claimant has to show not only do they have a significant limitation, but it's a significant limitation, plus it affects their ability to do work. Now, in my hypothetical example, the minute the ALJ says I have an occasional limitation in bending over or picking up, I have a significant limitation on ability to do a nonexertional activity. Therefore, the GRID rules facially would not apply because the GRID rules don't describe or anticipate bending over because that's a nonexertional limitation. Now, the Commissioner has promulgated a ruling, Social Security ruling 8310, with respect to the ability to do medium work. So if the ALJ says I can do medium work with occasional bending, the Commissioner has conceded that that wouldn't allow the application of the medical – the occasional guidelines. But in the case of limitation of light or sedentary work, the Commissioner says that the occasional limitation on bending and scooping doesn't really affect the ability to do any kind of light or sedentary work, so the GRID rules would still apply. So what the government has done is come forward with specific rulings or regulations that anticipate the applicability of the guidelines or not applicability guidelines and says in some cases it matters, in some cases it doesn't. But it's still the government's burden. In this case, the – the judge cited ruling 8515 for the proposition that the mental demands of unskilled work at the sedentary level alone aren't affected by the ability to not interact with someone for more than a third of the workday or approximately two to two-and-a-half hours. But the problem is, is that language the judge cites in that ruling applies to someone who can do any kind of work physically from sedentary to heavy, because this ruling involves people who can do any exertion, just not non-exertional activities. If the judge were to have read two paragraphs above, it specifically talks about when someone has a mental limitation, and that mental limitation affects substantially the ability to interact appropriately with supervisors, coworkers, and other work situations, not only does that erode the occupational base, but it could so erode it that it substantially leaves that person disabled. It gives an example. And I'll read it to you, Your Honors. It says a person whose age education normally is something that is very favorable as far as finding a non-disabled states would have a severely limited occupational base if he or she has a mental impairment which causes substantial loss of ability to respond appropriately to supervision, coworkers, and usual work situations. A fine and disability would be appropriate. So if the 8-hour workday anticipates someone interacting for 8 hours with individuals or having that ability to respond appropriately to supervision, coworkers, and usual work situations, a fine and disability would be appropriate. And your position is that that doesn't follow? Correct. Because it's a misstatement because on page 21 in the finding of the RFC, he says cannot do frequent interaction. Well, not frequent means one less occasional. He specifically says occasional in the narrative portion on page 20. He says can only do occasional interaction with those individuals. And Social Security ruling 96-9P further develops the issue with respect to what happens when someone's limited to sedentary work. Okay. You have used your time, and I completely understand. Is there any further questions? No. All right. None. Thank you. Jean Turk for the appellee. Michael Astrew, Commissioner of Social Security. I just want to begin by speaking about the Step 2 and the Step 5 controversy. I'd like to suggest that my colleague said there were two definitions for severe impairment, but I have to say that the way that we define severe is not necessarily that it is a significant impact, but that we say severe impairment is one that does not significantly impact the ability to perform basic work activities. So, therefore, I'd like to suggest that at Step 2 we're looking at that there is some impact on the individual's ability to perform basic work activity. That opens us up to Step 3, where we look at whether that impact is sufficiently severe to meet one of the listings. At that point, if it's sufficiently severe, the claimant is disabled. We bring that severity then down to the fifth level, where we look at whether that impairment is sufficiently severe to prevent that individual from performing their past relevant work or other work in the national economy. And I do believe that our regulation 96-8P or, pardon me, our ruling 98, 96-8P, our regulations, and, as we point out, hope I do try to resolve that controversy. You had a question, Your Honor? No. I just wondered. He referred to the regulation to a particular ruling, 85-15. Yes. Claiming error, legal error on relying on that. What is your response to that? I think a true reading of the ALJ's decision. And does it matter even if he did commit an error? Yes, Your Honor. I believe that the ALJ was simply pointing out that here a ruling that is dedicated only to non-exertional limitations says that a mental limitation, a significant mental limitation, a mental limitation, pardon me, would not significantly impact the ability to do unskilled work. And I believe that that's what the ALJ was trying to point to. I just have a few things to say, and that's that vocational expert testimony is merely a substitute for the use of the medical vocational guidelines. The medical vocational guidelines provide our regulation that the ALJ is meant to follow. It's only when the non-exertional limitations significantly limit the range of work that an individual can perform that we call on a VE. In this case, I think it's reasonable to find that only a substantial loss in the ability to perform unskilled work would result in a significant erosion of the work permitted under the medical vocational guidelines. The medical vocational guidelines, the section 201, specifically states the primary work functions in the bulk of unskilled work relates to working with things rather than data or people. And this ALJ, and I suggest that thousands of ALJs have interpreted that regulation to mean that unskilled work does not, is not prohibited by frequent, by a limitation of frequent contact with the public and supervisors and coworkers. The jobs available at the unskilled sedentary level would not be significantly impacted by a lack of frequent social contact. The ALJ found that there was no significant impact, made that ruling based on the regulations and guidance from the social security rulings. I therefore state that the ALJ did not err in applying the medical vocational guidelines simply because Klayman's non-exertional limitation was not sufficiently severe and did not significantly impact the range of work permitted under her exertional abilities. If you have any other questions or you'd like me to clarify, I'm very happy to do that for you at this point. And I will thank you, Your Honors. The case just argued is submitted for decision. We'll hear the next case, which is
judges: Schroeder, Smith, Walker